**Eileen THORNTON, Plaintiff,**

v.

**ST. PAUL PROPERTY & CASUALTY INSURANCE COMPANY, Defendant.**

**Civ. A. No. 89–540–JLL.**

United States District Court, D. Delaware.

Aug. 3, 1990.

**1142**

Elwood T. Eveland, Jr., of Woloshin, Tenenbaum & Natalie, Wilmington, Del., for plaintiff.

John A. Elzufon, of Elzufon, Austin & Drexler, P.A., Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. BACKGROUND

This is a declaratory judgment action requesting a declaration that the defendant insurer has a duty to defend and pay damages upon any finding of liability in plaintiff's favor in *Thornton v. Glenn*, C.A. No. 88–197. The plaintiff, Eileen Thornton ("Thornton") and the defendant, St. Paul Property and Casualty Insurance Company ("St. Paul"), have stipulated to the following facts. Docket Item ("D.I.") 13.

During the relevant time period, the University of Delaware employed Thornton as a Public Safety Officer. University of Delaware Public Safety Officers are empowered to make arrests for violations of City of Newark and Delaware State law.

On October 18, 1986, Thornton was on duty when she encountered Michael Glenn ("Glenn") with a group of friends outside Harrington Hall B on the University of Delaware Campus. Glenn, along with other members of the group, had open containers of beer in their hands. There was a partial case of beer nearby. When Thornton told the group that she was going to arrest them, most of the group fled, leaving Glenn and one other behind. Glenn then attempted to flee, but as he did so, Thornton grabbed him by his windbreaker jacket and button-down shirt. During the encounter, Thornton was injured, although neither Glenn nor Thornton was aware of the injury until after Glenn was arrested. The parties agree that "Glenn's only purpose was to flee from Thornton and avoid arrest," and that "Glenn had no subjective intent to cause injury to Thornton." D.I. 13, Stipulations of Fact 20 & 21.

At the time of the incident, Glenn had a personal liability catastrophe insurance policy with St. Paul. The issue presented by Thornton's motion for summary judgment is whether the St. Paul policy provides liability coverage to Glenn for Thornton's injuries.[1] Glenn's policy provides two types of coverage, excess coverage and "gap-filling" primary coverage. The terms of excess coverage are provided in two clauses of the policy. The first relevant excess coverage clause is entitled "Extra Insurance on Top of Your Other Policies." D.I. 12A at A–3. The second relevant excess coverage clause is called "Your Extra Personal Liability Insurance" *Id.* at A–7. The primary coverage is outlined in a section called "Broader Coverage Than Your Other Policies." *Id.* at A3. These provisions are addressed at length below.

St. Paul stipulated that Glenn's underlying homeowner's insurer, Fireman's Fund Insurance Company ("Fireman's Fund"), has paid its full policy limit, implicating St. Paul's excess policy. *See* D.I. 13 at ¶ 9; D.I. 15 at 1.

Jurisdiction is predicated on 28 U.S.C. § 1332.

### II. DISCUSSION

Thornton moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(e). When the parties stipulate to the relevant facts, the Court's function is to determine whether the moving party is entitled to summary judgment as a matter of law. *See Counties Contracting and Construction Co. v. Constitution Life Insurance Co.*, 855 F.2d 1054, 1057 (3d Cir. 1988); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 (3d Cir.1988).

---

[1]. St. Paul does not contest Thornton's "standing" to bring this action. D.I. 15 at 1. Accordingly, the issue of whether an injured party may bring a direct action against an alleged tortfeasor's insurer under Delaware law is not an issue in this case.

St. Paul argues that the intentional tort exclusion in the primary coverage section of its policy with Glenn precludes Thornton's claims. Further, St. Paul contends that Glenn's policy is not a "following form policy," and, therefore, does not cover all liabilities covered by Glenn's underlying Fireman's Fund homeowner's insurance policy. D.I. 15 at 11. As discussed below, the Court need not address this second contention because it finds the St. Paul policy clear on its face. St. Paul simply misreads the insurance contract in both of its contentions mainly because it fails to distinguish the terms of primary coverage from the terms of excess coverage.

The intentional tort exclusion states that the insured is not covered for liability arising out of the expected or intended results of the insured's own actions. *See* D.I. 12A at A–4. In Glenn's policy, however, this clause is *only* included in the "gap-filling" primary coverage section called "Broader Coverage Than Your Other Policies." [2] This "Broader Coverage" section states:

> Now let's turn to the basic conditions of the second type of extra protection when you're not covered by another policy. This may happen because of gaps in your coverage or because a claim against you is so unusual that it isn't covered by standard policies.
>
> . . . .
>
> To give you this type of extra protection, we give you broader coverage than you're likely to have in any of your other policies. Our definitions of accident or incident, property damage and personal injury are unusually broad.
>
> . . . .
>
> What do we mean by an accident or incident? Anything that causes property damage, personal injury or death without your expecting or intending it. If you could've expected the result, you're not covered except for assault and battery committed to save life or property.

*Id.* at A–3 to 4. The primary prerequisite for making a claim under this "Broader Coverage" section is for the insured to show that he or she is "not covered by another policy." *Id.* at A–3. By its own terms, the primary insurance, called "Broader Coverage," only applies when the insured is *not* covered by another policy. In fact, Glenn was covered by his underlying insurer for liability arising out of his encounter with Thornton. There is no intentional tort exclusion in any other section of the policy. Consequently, the entire primary coverage "Broader Coverage" section, and the intentional tort exclusion in particular, do not apply. *See Hallowell v. State Farm Mutual Automobile Insurance Co.*, 443 A.2d 925, 926 (Del.1982) (holding that policy language should be given its unambiguous meaning).

Where the insured is covered by another policy, the excess coverage clauses of St. Paul's policy come into play. "Extra Insurance on Top of Your Other Policies" provides coverage as follows:

> If a liability covered by this policy is also covered by one or more of your other insurance policies, we'll pay only the outstanding balance after all your other insurance and that of all those insured for the same accident is used up. We'll do this up to the limit of this policy.

D.I. 12A at A–3. An insured must meet three requirements in order to qualify for excess coverage under this provision. First, the liability must be covered by the policy. Second, there must be underlying primary insurance. Third, the underlying insurance must be exhausted. Here, Glenn was covered by the Fireman's Fund underlying primary policy, and the parties have stipulated that the limits of that policy have been paid in full ("used up"). The only question remaining is whether Thornton's claim is a liability covered by the St. Paul policy.

The "details" and liabilities covered by St. Paul's policy are given in the second

---

**2.** That this exclusion is only included in the primary insurance sections of the policy and not in the excess insurance sections is not surprising. Where an insurer is providing excess coverage, the risk is controlled by the exclusions in the underlying primary policy. Because St. Paul provides primary coverage in its "Broader Coverage" section, it must include its own exclusions to limit its risk for that coverage.

half of the policy. *See* D.I. 12A at A–5 ("In the following sections we'll show you how this policy covers your auto, homeowners and other liability."). The relevant section called "Your Extra Personal Liability Insurance" states:

> If an accident is covered by the liability section of your homeowners or comprehensive personal liability insurance, we'll make up the difference between what's payable under that policy and the sum total of what you legally have to pay, up to the liability limit shown on the attached declarations page.

*Id.* at A–7. Neither party has argued, contended or produced any factual basis that the incident which occurred between Thornton and Glenn was not "an accident covered by the liability section of your [Glenn's] homeowners or comprehensive personal liability insurance." Indeed, the strongest and clearest inference is that it was covered by the underlying Fireman's Fund homeowners insurance policy because, as stipulated by the parties, that company has paid the full limits under that policy. *See* D.I. 13 at ¶ 9. The Court cannot assume, or even imagine, that Fireman's Fund would have paid $100,000 unless its liability was covered by its policy. (*Id.*) Consequently, the encounter between Thornton and Glenn is covered by Glenn's excess policy with St. Paul, and St. Paul is, therefore, bound to provide a defense, and pay any damages Glenn is found liable for, in *Thornton v. Glenn*, C.A. No. 88–197, up to the limit of the St. Paul policy.

## III. CONCLUSION

Thornton's claim is not barred by the intentional tort exclusion in Glenn's policy with St. Paul. Further, all policy requirements for excess insurance coverage have been met. Accordingly, Thornton's motion for summary judgment will be granted. An appropriate order follows.

### ORDER

For the reasons set forth in this court's Memorandum Opinion entered in this action on this date, it is

ORDERED that a declaratory judgment be and is entered in plaintiff Eileen Thornton's favor and against defendant St. Paul Property & Casualty Insurance Company declaring that defendant has a duty to defend *Thornton v. Glenn*, C.A. No. 88–197, and pay damages upon any finding of liability in plaintiff's favor in that action, up to St. Paul's policy limits.